IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL BUTLER                                                          PLAINTIFF

v.                                Civil No.: 6:09-cv-06017

JAMES GIBSON *et al.*                                                   DEFENDANTS

REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Michael Butler (Plaintiff), an inmate of the Varner Supermax Unit of the Arkansas Department of Correction in Grady, Arkansas, filed this case pro se and *in forma pauperis* under 42 U.S.C. § 1983. (Doc. 2). Now before the Court is the Motion to Amend/Motion for Preliminary Injunction. (Doc. 9). To the extent document nine (9) is a Motion to Amend and add defendants, that Motion is addressed by an Order of the undersigned, filed separately. Herein, the undersigned will address the Motion to Amend/Motion for Preliminary Injunction (Doc. 9) *only* to the extent Plaintiff is requesting a Preliminary Injunction.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), this case is referred to the undersigned by the Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas. For the following reasons, it is the recommendation of the undersigned that the Motion for Preliminary Injunction be DENIED.

**I.      BACKGROUND**

Plaintiff filed his Complaint (Doc. 2) setting forth what he titled as "Claim 1" and "Claim 2." Plaintiff's Claim 1 is an excessive force claim, wherein Plaintiff states he was transferred to the Ouachita River Unit of the Arkansas Department of Correction on June 16, 2008 and upon arrival was given a cell assignment which was in conflict with his medical restrictions set forth by the Arkansas Department of Correction. (Doc. 2). Plaintiff alleges he informed Officer Otts, a

defendant herein, of the violation, and Otts assured Plaintiff that Otts would "take care of it" and get Plaintiff's cell changed. *Id.* Plaintiff then went to wait in the barracks for the cell change and informed Officers Haynie and Ford, also defendants herein, that Otts was getting Plaintiff's cell assignment changed and Plaintiff was to wait in the barracks. *Id.*

After approximately 15-20 minutes, Officer Burrows, also a defendant herein, entered the barracks and instructed Plaintiff to go to the barber shop and shave. *Id.* Officers Haynie and Ford were instructed to let Plaintiff go shave. *Id.* Plaintiff then asked Ford if Plaintiff could leave his property bag in the control room, so that it would not be accessible to other inmates. *Id.* Ford told Plaintiff to take the bag to Plaintiff's assigned cell. (Doc. 2). Plaintiff informed Ford that he could not lift in excess of 19 pounds (Plaintiff asserts the bag was 50 to 75 pounds), and could not climb steps (the initially assigned cell was on the third tier) due to his medical restrictions. *Id.* Plaintiff was then told by Ford "I don't give a f**k, get up them f***ing stairs!" *Id.* at 6.

Plaintiff states he attempted to explain again, but in the end, was forced to tell Ford "no" in response to Ford's direct order. *Id.* Ford then advanced upon Plaintiff in an "aggressive" manner and held handcuffs in his hand in a manner, which indicated to Plaintiff that Ford was going to strike him with the handcuffs. *Id.* Ford did not swing at Plaintiff, but Plaintiff felt the need to back-up as Ford became increasingly aggressive. (Doc. 2). Ford then ordered Plaintiff to submit to handcuffs. *Id.*

Plaintiff had prior information that officers in the Ouachita River Unit would routinely take inmates out of the sight of video cameras and abuse inmates who were restrained. *Id.* Plaintiff also states he has filed a previous lawsuit because a similar beating was done to him by officers in the Brickeys Unit of the Arkansas Department of Correction. *Id.* Due to the prior incident and

knowledge, Plaintiff believed he was going to be physically assaulted by Ford. *Id.* As such, Plaintiff backed into the barracks to a point where he knew video cameras would be recording, with the intention to submit to handcuffs in front of the camera, in order to document any abuse. (Doc. 2).

Plaintiff states he was unable to back into the barracks, because officers Haynie and Ford began to "flank" him in opposite directions "in order to jump [him]." *Id.* at 7. Ford then called for his supervisor on his radio; the supervisor was Lt. Otts. *Id.* Plaintiff states he attempted to reason with the officers, and even put his hand up in order to show he was unwilling to have a physical altercation, but Haynie sprayed him with a chemical agent. *Id.* Plaintiff swung in defense and was taken to the ground by Haynie. *Id.* Plaintiff states when on the ground, he complied with all orders and did not struggle or attempt to fight. *Id.* Haynie punched Plaintiff in the face, and then other officers arrived and also punched, kicked, and choked Plaintiff to the point of unconsciousness on at least two occasions. (Doc. 2). These incidents occurred after Plaintiff was cuffed and shackled. *Id.*

Plaintiff states he lost consciousness again due to being choked with his shirt. *Id.* Plaintiff was not allowed to walk, but was carried in a "hogtied" manner by his restraints, causing pain. *Id.* Plaintiff was slammed into door jams and doors. *Id.* Plaintiff lost consciousness due to being choked with his shirt a second time. *Id.*

At one point, Plaintiff heard Lt. Otts say "[t]here's too many!" which indicated to Plaintiff there were too many officers on cameras with Plaintiff. (Doc. 2). Plaintiff then lost consciousness again, and did not regain it until he was on the floor of the infirmary. *Id.* Otts refused to take pictures of the injuries, and the nurse refused to bandage a shoulder injury which was bleeding freely. *Id.* Plaintiff was told to put his sock, which he states was dirty, on the injury when he got to his cell. *Id.* Plaintiff indicates subsequent attempts to get adequate medical care were ineffective. *Id.*

Plaintiff's Claim 2 is an allegation of retaliation for a previous lawsuit Plaintiff filed in the Eastern District of Arkansas, *Butler et al. v. Norris et al.*, 2:07-cv-00128 (E.D. AR. 2007), regarding a separate use of excessive force by Arkansas Department of Correction Officers.[1] Plaintiff indicates that since the time he filed this case he has "endured numerous abuses." (Doc. 2). Plaintiff further indicates these abuses have been ignored by Arkansas Department of Correction officials. *Id.* Plaintiff states as an example of the abuses, his grievances concerning the incident at issue in this case have been ignored. *Id.* Plaintiff was told an entire investigation was conducted and completed, although no one ever spoke with him regarding the incident. *Id.* As a second example, Plaintiff states he has been involuntarily sent to a mental health program for eighteen (18) months. *Id.* Plaintiff also indicates he has lost unspecified privileges, was sent to administrative segregation, and now has an additional two and a half years before he is eligible for parole. (Doc. 2). Plaintiff also alleges unspecified physical abuse, verbal abuse, sexual harassment, racial discrimination and/or harassment, inadequate medical care, and the denial of 50-70 grievances as retaliatory acts. *Id.*

On February 17, 2010, Plaintiff filed a Motion to Amend, which outlined the following additional claims. (Doc. 9). Plaintiff alleges he notified Wendy Kelly, one of the defendants he proposed to add to his lawsuit, as well as Grant Harris, Curtis Meinzer, Darryl Golden, John Whaley, and Revonna Waller, all also proposed additional defendants, that he was not receiving adequate medical attention for injuries suffered during the altercation with the defendants described in his Claim 1. (Doc. 9). Plaintiff further alleges these defendants, as well as others named in the Motion to

---

[1] The Eastern District of Arkansas case was settled by agreement of the parties. Plaintiff agreed to dismiss his lawsuit in exchange for removal of the Reduction of Sexual Victimization Program (RSVP) condition from Plaintiff's parole consideration. (Doc. 176 in 2:07-cv-00128). The Eastern District Case was dismissed with prejudice on September 14, 2009 pursuant to the settlement agreement. (Doc. 156 in 2:07-cv-00128).

Amend, have ignored the doctor's orders that Plaintiff not climb stairs. *Id.* Plaintiff has feared for his life due to walking up and down stairs and has missed yard call in order to avoid stairs. *Id.*

Further, Plaintiff states proposed defendants CMS, Ms. Gordon, Dr. Scott, Dr. Ifadora, and Wendy Kelly, as well as the presently unidentified "lab nurse" have all repeatedly refused to provide him, for over two years, with medical care that results in a diagnosis or treatment. *Id.* Plaintiff describes the medical treatment he has received as "cursory at best." *Id.* at 2. Plaintiff also indicates the doctors ordered tests for him which were refused by the nurse. (Doc. 9). Plaintiff appears to indicate the doctors continued to order tests from the nurse, despite the prior refusals to carry out the doctor's orders. *Id.* Plaintiff still suffers pain, with no diagnosis in over two years. *Id.*

Plaintiff seeks in his Motion to Amend/Motion for Preliminary Injunction to add as defendants the following persons: Correctional Medical Services, Ms. Gordon, Dr. Scott, Dr. Ifadora, Wendy Kelly, Grant Harris, Curtis Meinzer, Darryl Golden, John Whaley, Revonna Walker, and lab nurse of CMS. Plaintiff also seeks to have diagnosis and treatment as well as pain management, and his housing restrictions obeyed by an Order of Preliminary Injunction.

## II.     APPLICABLE LAW

The two kinds of immediate injunctive relief are Motions for Preliminary Injunctions and Temporary Restraining Orders and they differ in several respects,[2] but the applications for each are

---

[2] Rule 65 of the Federal Rules of Civil Procedure provides that "[n]o preliminary injunction shall be issued without notice to the adverse party," Fed.R.Civ.P. 65(a)(1), while a TRO "may be granted without written or oral notice to the adverse party or that party's attorney," but "only if" certain requirements are met. *See* FED.R.CIV.P. 65(b) (emphasis added). Thus, a TRO may be, but does not have to be, issued ex parte, but a preliminary injunction cannot be issued without notice to the adverse party. However, although a preliminary injunction cannot be issued without notice, the fact that notice is provided does not necessarily mean that the relief granted will be a preliminary injunction rather than a TRO. *See Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

generally measured against the same factors, which were established in *Dataphase Systems, Inc. v. C.L. Systems, Inc*., 640 F.2d 109, 113 (8th Cir. 1981)( en banc ).  The Court will consider: (1) the threat of irreparable harm to the movant; (2) the state of balance between the harm and the injury that granting the injunction will inflict on the other party litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest.  No single factor is dispositive, but the movant must establish a threat of irreparable harm.  *Id.*  Without a finding of irreparable injury, a preliminary injunction should not be issued.  *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.* ., 871 F.2d 734, 738 (8th Cir. 1989)(en banc).

In *Gof v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995), the court addressed the district court's role in inmate applications for injunctive relief as follows:
> [I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration . . . The courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate.

*Id.* Courts are further cautioned that, "injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." *Rogers v. Scurr*, 676 F.2d 1211,1214 (8th Cir. 1982) (quoting *Holiday Inns of Am. v. B & B Corp*., 409 F.2d 614, 618 (3rd Cir. 1969)).

### III.   DISCUSSION

Plaintiff has asked for a preliminary injunction to have diagnosis and treatment as well as pain management, and to have his housing restrictions obeyed.  As service has not issued, this Motion is most properly characterized as a Motion for Temporary Restraining Order.  *See* note 2, *supra*.  As

such, Plaintiff must show how he will suffer "immediate and irreparable injury, loss, or damage . . . before the adverse party can be heard in opposition." *See* FED. R. CIV. P. 65(b).

Here, Plaintiff has not demonstrated he will suffer irreparable injury. He is requesting immediate diagnosis, treatment, and pain management, but indicates he is being evaluated by medical staff and has been undergoing testing by doctors at his institution of incarceration. By the facts of Plaintiff's complaint, he is receiving medical treatment and an attempt at diagnosis is ongoing through his medical providers. Plaintiff may disagree with this treatment; however, Plaintiff does not have a right to the medical treatment of his choice. *See, e.g. Ferguson v. Cape Girardeau County*, 883 F. Supp 431 (E.D. Mo. 1995) (holding an inmate's disagreement with a course of medical treatment will not give rise to a constitutional claim). Disagreement among doctors as to the proper course of treatment will also not state a constitutional claim. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). Moreover, Plaintiff has provided no medical evaluations or records to the Court to demonstrate an immediate diagnosis, a different course of treatment, or additional pain management is possible and being ignored by his physicians.

A similar analysis is applicable to Plaintiff's request for a temporary restraining order to have his housing restrictions obeyed. Plaintiff has submitted no evidence he indeed has housing restrictions which are not being obeyed by some or all of the Defendants. As such, Plaintiff can not meet his burden of showing immediate "irreparable injury, loss, or damage."

**IV.   CONCLUSION**

Accordingly, I RECOMMEND the Motion for Preliminary Injunction /Motion to Amend (Doc. 9) be DENIED, to the extent Plaintiff seeks a Preliminary Injunction or Temporary Restraining Order, for the forgoing reasons.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of June 2010.

/s/ Barry A. Bryant
BARRY A. BRYANT
U.S. MAGISTRATE JUDGE